Good morning. Will the attorneys who are going to argue the case please approach the podium, identify themselves and the party they represent, and indicate to us how much time they would like to argue. Now remember the microphone is for recording purposes, not for amplification. So if you want to be heard, you're going to speak up. Thank you, Your Honor. Good morning. Good morning. Dan Nolan on behalf of the Flannery State Farm & Casualty Company. Your Honor, do I need to break up my time now or I'd like 20 minutes to argue. Okay. That's fine. We'll give you a little time for rebuttal. Okay. Thank you. Good morning, Your Honor. Cormer Brown on behalf of Appalachia Soterra Sync. We would like 15 minutes to respond. Very well. Thank you. Mr. Knoll. Good morning, Your Honor. My name is Fedor Kozlov. I am an attorney on record for Mr. Debrovsky. For both the Debrovskys? My office received on Tuesday of last week notice from Mr. Debrovsky that he discharged my services and I'm not authorized to appear on his behalf. He told me that his lawyer, new lawyer, will appear. I received a phone call from Office of Boris Perot on Monday, but from that point nobody else called me. I called Mr. Paul Debrovsky and advised him of today's proceedings, to which point he said that he no longer wants to talk to me and his father, Jeff Debrovsky, is in a nursing home. Okay. Thank you for telling us that. If you want to withdraw from the case, you're going to have to file a motion to leave to withdraw from the case. Set forth your basis for withdrawing and then we'll rule on that motion. Thank you, Judge. I seem to have didn't have time because I was out of town. That's fine. Make your convenience. My apologies. That's all right. Thank you. Mr. Nolan. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Dan Nolan and I represent the plaintiff, State Farm Fire and Casualty Company. The facts of this case present an issue of first impression in the state and from the out-of-state cases that have been provided in the briefs, an issue of first impression, an issue that has not been specifically addressed by any other court either. In this case, the named insurer, Jeff Debrovsky, procured a homeowner's insurance policy with State Farm for property at a location at 1826 Park Avenue in North Chicago, Illinois. Jeff did not own the property and has never owned the property. Jeff was not the mortgagor of any mortgage on the property. While the parties have cited quite a number of cases in support of their respective arguments, the trial court agreed that there are a novel set of facts here to apply to State Farm's homeowners policy and to the law in Illinois. Can I ask a question? Sure. Did Jeff claim to be the mortgagor in this application?  Jeff did not claim. Well, Jeff reported that he was the owner of the property and gave the name of a company, I think it was IBM at the time, as the mortgagee. So, I mean, I don't want to misrepresent what he said, but it was presented that essentially, or assumed at least, that he was the owner and the mortgagor. Well, when you say he reported, I don't get that. Did he fill out a form that said, that asked the question, do you own the property, is there a mortgage, and who's the mortgagee? He did not fill out a form by hand, no. He answered questions with regards to the insurance that he was seeking. An electronic application was submitted. And was that electronic application part of the record of the trial court? Because I did not see that in the record on appeal. Do you know? If you don't know, you don't know. I believe it was, but I can't, I apologize, I can't speak to that. I mean, the question I think we all have is, who's in a better position to sort of sort this out at the get-go? I'm sure you will say Sataris. But, you know, what did State Farm know when they issued this policy and took the money? Well, State Farm understood from him, just like if you go to take out insurance on a property, or a car for that matter, you represent to the insurance agent that you answer questions relating to your ownership interest in the property, and then an application is submitted. Well, that's an assumption. See, no, no, I guess what I'm saying is if an insurance company is trying to either enforce an insurance agreement or get out of an insurance agreement, they say, the terms of our agreement was that he represented or she represented that they own the property, they have a mortgage, they don't have a mortgage, who the mortgagee is, and then if something goes awry, the insurance company says, they didn't tell me that. I asked them this question, they avoided it, they didn't answer it, they lied. So how are we to understand what the relationship was or what formed the basis of the contract? I mean, that's the confusion. Okay. I mean, the relationship was the report by Jeff Dabrowski. I believe it is in his recorded statement that was, you know, part of the record. I can get that if you want that. But he gave a recorded statement to State Farm, the claim representative by the name of James Fitzpatrick. That's after the fact. Right, after the fire. But it talked about what he reported at the time that the insurance was taken out. I guess if the application for his policy, electronic or otherwise, is part of the trial court record and not part of the appellate court record, we would like to see it. That's what I believe I would say. Okay. But you can move on. Because I don't believe it is part of the appellate court record. The actual application? Yes. Okay. What he said after the fact about what he had said four years previously, that is helpful to us, is what did he say at the time he applied for insurance? I understand. I believe in the recorded statement he talked about a phone call to the agent's office in order to take out this policy as opposed to an in-person visit. Maybe that. There is no application. Okay. So we submit, State Farm submits, that the trial court erred when it ruled that Soteris could recover under State Farm's policy even if the policy was void ab initio as against public policy based on Jeff Dabrowski's lack of any insurable interest at the time of the policy. And how is that positioned square with Wolfram, where this Court has said one party has an insurable interest, another party doesn't, only void is to the party that doesn't have an insurable interest? The difference between Wolfram, Your Honor, is that in Wolfram there was an additional insurer that was listed on the policy. Not the mortgagee. It was the insurers coming forward. One of the insurers did not have an insurable interest. The other one did. And the Court basically found that even though the named insurer didn't have an insurable interest, the additional insurer did. And they had rights as an insurer. In this case, we don't have an insured with any insurable interest in the property. I understand the rights of a mortgagee under a standard mortgage clause, which you agree this was. Yes. They're at least as broad as the rights of an additional insurer under policy. I mean, it's a separate contract where any defenses against a named insurer don't help you against the mortgagee. So I'm just not clear why Wolfram wouldn't apply. Well, it's our position and our argument, Your Honor, what we're submitting is that it is different because the insurer and insured, meaning the person coming to the insurance company asking for this coverage, whether it's alone or with another person, has to have an insurable interest in the property before any insurance kicks in because of the issue of our wagering contracts. And so we don't, you know, in Wolfram, we don't have an issue with a wagering contract because the additional insured did have an insurable interest. In this case, we don't have any insured. But the mortgagee surely has an insurable interest. But the mortgagee's insurable interest in a policy has to be attached to a mortgage or. And in this case, we don't have a mortgage or that's an insured under this policy. That's a different, that's I think your second argument. Well, I think there are two separate and distinct arguments. Let me go back for one second to your first argument. Putting Wolfram aside, what court in any state has agreed with you that the lack of an insurable interest by the name insured will make, will deprive a mortgagee of coverage? Any state that has said that. Well, I think you're right, Your Honor. This is a case of first impression as we've presented. But throughout the country, there are cases that support Soteris' position in other states. No. Is there any court that? No, there isn't, Your Honor. In the cases that Soteris has cited in this case, there's issues where there's a mortgagee who may not have been, had an insurable interest at the time of the loss, but did at the time the policy was procured. And so from the mortgagee's standpoint, if there's that relationship at the time of the insurance between the mortgagor and the mortgagee, then I agree that it would be unfair to not protect the mortgagee where the mortgagor is the one that took out the policy for the protection of the mortgagee. But in this case where we have someone who has no relationship to the mortgagee taking out a policy, that never, that connection, that linchpin is not there. And so I really do think these are two separate and distinct arguments. One is if the policy is void ab initio against public policy, then it's void and no one has any rights under this policy. The second argument is, or the second position is that in order for a mortgagee specifically to have interest in a policy, that mortgagee has to have a connection at least at the time the insurance was taken out with the mortgagor, the person who's insuring that policy for the mortgagee's benefit. Why wouldn't the relationship to the property that's being insured through the individual, why wouldn't that be enough connection to the policy? Because the insurance company is saying I'm insuring whoever's going to pay the premium and the mortgagee, whoever that is, just tell me who it is. Well, in this case, based on this unique set of facts, what we did do was try to put together the different cases that stand for different propositions that apply here and try to apply them to the facts of this case. So there is the line of cases that basically nationwide, but particularly in Illinois, that state that an insurance policy, a property insurance policy, is a personal contract with the named insurer and the insurer. And it does not run with the land. It's not transferable with the property without the specific permission or authority of that insurance company. So in that particular scenario, the policy that's procured by Jeff Dabrowski does not attach to the land. And so Soteris doesn't get rights as a mortgagee because they are the mortgagee for this property but have no relationship to the insurer that it was procured on behalf. What is the language in the policy, if any, that supports that position? Well, I think the, you know, obviously I have a lot of argument with regards to the different cases here. But looking at the policy, I think when you have to look at the policy as a whole and when you look at the mortgage clause, one of the portions of the clause that specifically addresses this issue is the subrogation aspect of the mortgage clause. And so if you look at Section 10d1, it basically says that if we pay the mortgagee for any loss and deny payment to you, you being the named insurer, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property. And so it incorporates the mortgage into the policy and leaves us with the situation specifically here that if State Farm were to pay Soteris as the mortgagee, who do they have subrogation rights against? The policy would say that you have subrogation rights against the mortgagee because those are the only rights in the mortgage. But I'm sure Paul, if he would argue today, would argue that he's not part of any contract with State Farm and State Farm's not going to have any contractual rights against him where he's not a part of this insurance contract. But he'd be subject to the mortgagee, right? If you're subrogated, you're standing in the shoes of the mortgage company against Paul. I don't think you can. The way I understood your argument was if the insurance company paid the bank, right, the insurance company would be subrogated under the mortgage, right, against Paul. So State Farm wouldn't lose anything in that case if they paid Soteris, no? If you look at the line of cases that addresses the subrogation clause and what happens if State Farm pays Soteris and then has to subrogate against Paul, unless State Farm can establish that Paul essentially did something under the policy to void coverage, then that's not going to be a defense to State Farm's not going to be able to use that against Paul, at least in the line of cases that we cited in our reply brief. No, but you're confusing. Because if the insurance company is subrogated under the mortgage company, it takes the rights of the mortgage company, right? Whatever rights the company had against Paul. But those are by the contract of the insurance. No. The way I understand your argument is State Farm pays the mortgage company. Upon payment to the mortgage company, it becomes the subrogate of the mortgage company. And in that capacity, it assumes whatever the mortgage company had, any positions it had against Paul, right? Right. If we follow the language that I just read and insert names in this case, then yes, that is an accurate statement. But my response to that is that because if State Farm subrogates against Paul, Paul is going to raise a defense to State Farm's subrogation, and say, I was never a party under the policy under which you're claiming you now have subrogation rights against me. So State Farm is essentially out of luck if they pay Sateros here. There's no one to subrogate against. Because Paul is not the mortgagor, and the mortgagor itself has no contractual relationship with State Farm here. Paul is the mortgagor? Paul is the owner and the mortgagor of the property, yes. And Jeff is the name that you're... Right. Jeff is the father. Paul is the son. So you can't go after Paul because he's not a party to the contract with you. Yes. Okay. And so that's what we're essentially asserting under the contract as to why we cited, and I know you've read it all as far as the Minnesota cases in this language about a separate and independent contract that's created when it's attached to an insurance policy that runs to the mortgagor. But if you don't have that linchpin, and even the Illinois cases that Sateros relies on and the trial court relies on, and a very good one, I think, is the federal court, the district court's opinion in the Sal Bank v. Federal Emergency Management, 185 Westar 2081, it basically says that the effect of inclusion of such standard clause, meaning a standard mortgage clause, is to create a contract between the mortgagee and insurer distinct from the contract between the mortgagor and the insurer. And the insurer can then not use the defenses it has against the mortgagor against the mortgagee. But in all of these cases, in Auckland and in Old Second Bank, there's language like this talking about the mortgagor being the essentially implied in these cases, the mortgagor is the name insured. And in those cases, that's true. So it was not an issue in those cases. So that is how you basically distinguish all the cases Sateros relied on, in that even if those are correct about insurable interest, et cetera, et cetera, in all of those, the name insured was the mortgage. Is that accurate? That's right. And this further cite from the Sal Bank v. FEMA case says, this separate contract is engrafted upon the main mortgagor-insurer contract contained in the policy itself. And so these Illinois cases and these cases applying Illinois law do support the argument that we're making here. There is not a case directly on point. But when we look at the policy as a whole and the relationship and try to apply the law as a whole, I believe the State Farm's argument is a solid one. Let me ask you as an insurance maven, when would it be, and I think you've answered this, but when would it be that the name insured would not have an insurable interest but would be the mortgagor? Name insured? Is that possible? Name insured would not? Because the mortgagor got the mortgage but does not have an insurable interest. Doesn't the mortgage give the mortgagor an insurable interest? This is a genuine question. I'm sorry. The name insured was the mortgagor. Okay. Okay. Not this case. Not your case. Right. But they don't have an insurable interest. Is that a possible thing? I think it is. I could point you to it. There is a case in the materials along those lines, and I'll explain the facts, and then I can't cite the case to you off the top of my head, but I can provide it to you. There's a case where at the time of the contract, the mortgagor and owner of the property insured the property with the mortgagee. Then during the, essentially, facts of this case, the name insured mortgagor transferred the title of the property to a company, an LLC. So now that name insurer who originally took out the policy no longer has an insurable interest on the property itself. And in that case, as we agreed, the mortgagee was properly protected, even though the mortgagor did not have an insurable interest at the time of the loss for the reasons that I stated earlier. I think that might be Boehm. That is Boehm. You're right. I remembered the name. All right. It's academic, but it seems to me that if you still have the debt, you arguably have an insurable interest. But I think it's somewhat academic. Well, I don't think there's a, well, the court in that case found there was no insurable interest, but I understand the argument as well. In this case, we don't have any scenario like that. There were never. The name insured in this case was never the mortgagor, is your point, never, ever, ever, ever responsible to satirists or the debt. That's correct. Can I ask a completely different question? Sure. Which is, if we agree with you and we reverse, does the case need to be remanded? What about the, and I'm asking you to, I know they're not your client, but the other appellants here, the Dabrowski's, are there remaining issues as to them? Well, I mean, this case was decided at the trial court level based on cross motions for summary judgment. The trial court judge found there to be questions of fact with regards to the insurable interest of Jeff Dabrowski. We disagree with that based on the request to admit they were part of the record, based on the bankruptcy filings, based on the depositions of the housing. But no one's really argued that on appeal. What's that? No one's really tried to convince us on appeal that there's no issue of fact as to insurable interest, I don't believe. Well, I mean, we raised it, but I agree. We didn't spend our briefs getting into all the nitty-gritty about that. So, you know, with that in mind, yes, the case would be remanded for the trial court to make a determination as to whether Jeff Dabrowski has any insurable interest. However, if you agree with the second argument that there has to be that linchpin between the mortgagee and the named insured of having a mortgage together before State Farm has any obligation to Soteris, then that part of the case does not have to be remanded if that's the decision. But so you could arguably at least have some coverage obligations to Dabrowski, even if you didn't have any to Soteris, arguably. Arguably, because that has not been ruled on by the trial court, at least. So you're saying that the relationship between Jeff and State Farm arguably may develop into some liability there, a relationship, insurable interest or whatever. But if that's the case, then why wouldn't Soteris be involved also? Because if there's a relationship between State Farm and Jeff under this policy, Soteris is named under this policy as the mortgagee. So how do you... So, again, there's no connection without a connection. I understand, and I look at this, our argument is really two separate and distinct ones. One is the policy of void ab initio and no one has coverage. The other is essentially that Soteris cannot have rights under this policy with State Farm where it has no relationship to the named insured, and its mortgagor has no relationship to this policy. And so that's separate and distinct from this other issue. We have not addressed, I don't know what Soteris's arguments would be, is to try to create some sort of case against Paul and Jeff. But for purposes of this argument and the remand, if our second argument is correct and accurate and you agree with that, then I would propose that Soteris is not part of the remand. The only thing left for the trial court to decide is whether Jeff Dabrowski is entitled to anything under this policy. And, again, I'm not speaking for Soteris. They may come up with other... Fair enough. So, I mean, I don't know how long I've gone, but unless you have other questions, I'd like to reserve the balance of my time for rebuttal. Yeah, unless you have something that you feel you must raise at this point. I think we've hit with your questions. I think we've covered all. Thank you. You took it with more grace than most. Thank you. I appreciate that. I agree with you that it's a question without a lot of law out there. Good morning. Good morning. May it please the Court, Coleman Braun on behalf of athlete Soteris. It's our position that this entire issue can be resolved by applying the plain and ordinary terms of the standard mortgage clause to the facts of this case. It's wrote in Illinois that the contracts and policies are interpreted pursuant to the plain and ordinary means to give effect to the party's intent and that unless there's some ambiguity, there's no further analysis needed. Here, the standard mortgage clause is the entirety of the separate and independent agreement between Soteris and State Farm. Thankfully, that provision is relatively short. It imposes only three requirements on Soteris, and I paraphrase, but those are to provide notice to State Farm of any change in occupancy, ownership, or substantial risk that Soteris is aware of, to provide payment of premium as requested by State Farm, and third, to submit a sworn statement of loss if requested by State Farm. There is no dispute and there's no argument by State Farm that Soteris did not comply with those terms of the standard mortgage clause. But what about opposing counsel's argument that if we read the mortgage clause as a whole, including the subrogation provisions, an argument can certainly be made that it appears that the premise is that the mortgagee is the mortgagee of the name-consumer, that that relationship exists. That's the premise. I understand that, and I especially disagree with counsel there, and I think it's, again, the standard mortgage clause defines who the mortgagee is. It does? Where does it say that? It just says, a mortgagee. No, it says the mortgagee includes trustee, and then Part A says, if the mortgagee is named in this policy, any loss paid will undergo coverage. If any mortgagee is named in this policy? And under the declarations, there is a designation for the mortgagee, and that is Soteris. So a complete stranger to the mortgage, a complete stranger, absolutely not even in this case, no relationship whatsoever, gets an insurance policy and names Federal Savings and Loan as the mortgagee, that person's entitled to coverage, no matter who got it, the policy. That's your position? Yeah, I don't know. I think there are protections that provide in the insurance realm against that. And as this Court noted in Stonegate v. Hogsmeyer from 2017, where the Court elaborated upon standard mortgage clause and loss payee provisions, and where the Court, relying upon the Posner v. Farman funds case from 1964, essentially elaborates that a standard mortgage clause is just a more substantial loss payee provision, and that any loss payee provision could form the basis of a separate independent contract between the designated loss payee and the insurer. The only concerns in doing so are, one, that the insurer consents to a separate independent contract, and two, that the name loss payee has an insurable interest. So in your hypothetical, Your Honor, where the name mortgagee has no relationship, has no interest, they wouldn't be able to recover because they have no insurable interest. That's not the case here. No, no. The loss payee, the mortgagee, clearly has an insurable interest. Well, I'm sorry. Maybe I misunderstood your hypothetical. I'm just saying that some complete stranger to the mortgage names the mortgagee. I do. I do. I think your answer is yes. Yes. As long as that person is named and as long as that person, the loss payee, has an insurable interest, it doesn't matter what relationship that person has to the named insurer. Exactly right, Your Honor. I don't think that is of any concern with the independent contract. And I know it because State Farm drafted this contract. And from the plethora of case law going back 60, 90, 100 years, you can see that these terms, these standard mortgage clause, have evolved over time. The terms, the language of these provisions has basically been whittled away to this now, what you see in State Farm's version of it. Do you have a case, your opposing counsel says you don't, in which the named insured was not the mortgagor and yet the mortgagee was intended to recover? No, Your Honor. And I think that you pointed to the welfare and partnership case. And I think we rely upon that because the logic applies here. It's whether or not if you're an additional insured or additional named insured on the policy as opposed to a mortgagee or a lost payee with a separate insurance, you have at least the same amount of rights as an additional insured. And I would argue it's even broader under the provision that State Farm drafted for its policy at hand. And notably, counsel referenced that the policy need be read as a whole. I would say that the policy, the contract between State Farm and Satterish, needs to be read pursuant to the terms of the Standard Mortgage Clause first. And only if and where that clause incorporates the policy between State Farm and Jeff Dabrowski, would that apply to Satterish. And I think that's important because even now, there is no mandated or enumerated by statute or case law version of the Standard Mortgage Clause. It doesn't exist. It was never enumerated. Exactly right. And you can see even from the modern case law, Old Second and Stonegate from this court, they involve different versions of the Standard Mortgage Clause drafted by different insurers. And most notably, so that the Mortgage Clause at issue here provides that under the third requirement, that the policy conditions relating to appraisal, suit against this, and lost payment apply to the mortgagee. It doesn't say that any other provisions of the policy between Jeff Dabrowski and State Farm apply to the mortgagee. It doesn't incorporate the entire policy. It lays out exactly what the terms are and what the requirements are for Satterish to be afforded coverage under this separate and distinct contract with State Farm. Would you be able, as the mortgagee, to make sure that the policy is taken out by your name insurer? Don't you have an agreement with your name insurer, obviously, that they're going to – I'm sorry. You have an agreement with your mortgagee that they're going to take out insurance that protects you. Correct, Your Honor. And you're in the best position to enforce that agreement, correct? Well, Your Honor, that is true. But all that we are concerned about is that our mortgagor provides proof of insurance for the property at issue. You don't care who the name insured is on that policy? No, Your Honor. And there's good reasons why that wouldn't really matter to us in certain situations, whereas if the property was used – was rented out, appropriately rented out to tenants, the tenants could be required to maintain the insurance policy, as long as our interests are protected by the standard mortgage clause and declarations page naming us. And also, Your Honor, there's instances where, let's say, a husband and wife live in the property. The husband's the mortgagee – I'm sorry, the mortgagor, but the wife is not. If the wife can take out an insurance policy, has an insurable interest, there would be no reason for us to require further investigation. And I would propose that the initial burden should be on the insurer in doing their underwriting appropriately to ensure who the parties are to the contract they're putting together. So you just require a mortgagor proof that the property that you have a mortgage at is insured? Correct, Your Honor. There can be additional requirements, flood insurance requirements, what have you, but it really – and the amounts of the insurance can vary, but really it's – we have the discretion to determine whether or not the policy – the proof of insurance provided by the mortgagor is appropriate and ensures our interest. And you don't look beyond the policy that's given to you to see whether the insurance company inquired of the insured, do you own the property, do you have a mortgage – are you the mortgagor on the property, do you have an insurable interest in the property? Correct, Your Honor. I mean, because that would require us as the mortgagee  And not only is that just – would be a greater cost imposed in this insurance transaction where the State Farm passes along the buck and the cost to underwrite to us, but then we don't have the infrastructure like State Farm does to make those inquiries at the time of the application. And then, you know, let's say we do this and then we have to advise the insured and the insurer that the policy is potentially defective. And that's a requirement that isn't found in the standard mortgage clause. What about your argument that you made on the damages phase that the standard – I'm sorry, that the mortgage clause incorporates – the mortgage clause in the policy incorporates the mortgage? That's correct. The segregation provision refers to the mortgage. And I don't see – And how does it incorporate something where the named insured isn't a party to the mortgage? Again, that doesn't seem to be an issue at all, because we can assign our rights to the mortgage to the insurer without the permission of the mortgagor. It's freely assigned more rights. It doesn't change or enhance the burden or obligations of the mortgagor under the mortgage. Essentially, if there's any recovery against the mortgagor that we could seek for whatever reason, State Farm would get that. I don't know – the policy doesn't come into play at all, because we don't have any rights under the policy against either Jeff Dabrowski or Paul Dabrowski. Under the – Under the insurance policy. But under your mortgage, your rights are freely assignable without the permission of the mortgagor. Absolutely. Correct, Your Honor. And I think that's also true just – the general law in Illinois for the assignment of contracts. There's no barrier to it. So, Your Honor, I think the gist of our argument is that if you – if you look any further than the standard mortgage clause to determine what rights the parties – what the intent of the parties was between Sutteris and State Farm. Additionally, Your Honor, so essentially the way we read State Farm's brief and their arguments are that they are requesting that the court impose additional obligations and requirements on Sutteris that aren't explicitly elucidated in their standard mortgage clause. They – and importantly, as I stated initially, in interpreting the contract, you give the terms their plain and ordinary meaning, unless there's an ambiguity. State Farm can't point to a single ambiguity in its policy that would give rise to an implicit requirement for privity between the mortgagee and the name insured. As I stated, they identify who the mortgagee is presumed to their own terms. And if you look at the – and again, they rely upon these older case law, but if you look to it, especially we discussed the – the court discussed the syndicated versus bond case from the Eighth Circuit from 1894. If you look at the terms of that standard mortgage clause at issue there, it's far more detailed. As, you know, attorneys and policy writers back in the day were more wont to do, they – each policy was more individually crafted. So it's a detailed – the standard mortgage has a more detailed elaboration and description of who the parties are. So this archaic term relied upon by State Farm running with the mortgagee is merely a relic of these past policies. And you'll see that that term doesn't – it hasn't – isn't referenced at any point. And I may – I could be correct, incorrect, but it seems like it cuts off around 1940 or so. But all the recent case law, importantly, Old Second from Illinois and Stonegate from Illinois, they don't make reference to this. They're not attached to a policy. Attached to a policy running with the mortgagee or any of that kind of reference where it's really important that these are the parties and who uses the relationship, right? The State Farm could have spelled that out in their standard mortgage – in their clause. There's no prohibition against that. So you're reading it that language as that was actually language that came from the policies. It came from the policy or it was merely just a factual recitation of the premise at hand. But it wasn't – it isn't a requirement and it doesn't – and it's dicked up because it doesn't change the holding in those cases in saying that this is a separate and independent contract between the insurer and the mortgagee. And that's really the meat and potatoes from those past cases in that establishing that this is a separate and independent contract that attaches and exists and continues regardless of any act of what insured, whether that's void after or whether it's prior to or subsequent to any of the – to the policy attaching, because it's separate and independent. State Farm's argument is that the policy never existed. So how can there be the standard mortgage clause? And they simply ignore all this plethora of case law that says that it's a separate and independent contract. So the policy being void between Jeff Jablonski and State Farm has no bearing on our contract with State Farm. It can't in any way, unless it is one of these provisions, one of these requirements, we have no obligation to address those or are obligated to comply with those terms. There's one other issue that State Farm argues, and this is the residence premises argument, namely that the residence premises provision is a condition subsequent to coverage. So there cannot be coverage unless this provision is complied with. And we quite follow on that because on a number – for a number of reasons. One, and again, going back to the language of the policy or the standard mortgage clause, the standard mortgage clause doesn't – doesn't reference or specifically adopt that provision as to its tariffs. And notably, the standard mortgage clause addresses changes in occupancy, ownership, or a change in the risk. It has to be something you're aware of. It has to be something you're aware of. And like I said, there is no dispute, there's no issue raised on appeal that we didn't comply with that provision. So if in fact the residence premises provision of the policy relied upon by State Farm does apply to tariffs, there is an ambiguity then because the standard mortgage clause provides what all obligations are in those situations. And if there is an ambiguity as to coverage, it's construed against the insurer and in favor of coverage. So here you would say – At best, what you're saying is – At best. At best, exactly. So here, even if that did apply, it doesn't apply to us. And the proper reading of the standard mortgage clause says that doesn't apply. Moreover, the residence premises provision in the policy is contrary to the Illinois standard policy as it attempts to provide lesser coverage than mandated by the Illinois insurance code. And the court in the Northern District of Illinois Court examined State Farm's provision, this provision, over 15 years ago and ruled that that provision was in violation of the Illinois standard policy and was unenforceable as written by State Farm. So State Farm can't come back now and argue that this is a condition subsequent or condition precedent and it doesn't provide any coverage under the policy because that's – because the courts already – sorry, the Northern District already analyzed that issue and said that's not correct. Okay, any other topics you want to hit on? Yeah, I would just like to quickly state that as to the Dubrovskis as they filed their own appeal, their notice of appeal did indicate that they took issue with the ruling about the incorporation of the mortgage and the application of the proceeds pursuant to the mortgage terms. But they didn't raise that in their opening brief, and for purposes of appeal, I believe that's waived. Thank you, Your Honor. Unless there are any other questions, we'll rest and we'll wind up on our briefs. Okay, thank you. Mr. Nolan, brief rebuttal. Thank you, Your Honor. First, I'd like to ask for leave to file some sort of supplemental letter or memo to the extent that – we brought part of the record with us, but my co-counsel was looking through what we brought and I didn't see the application in it. So to the extent that the application is in the record, I'd like leave to be able to just point you to that. I'd like that. Is there any objection by a co-counsel to that? Only – we're only interested in seeing if it was before the trial court, obviously. Yeah, I mean, no objection, only just the option is to just respond if there's any issues raised. Right, and we're not asking for argument. No, just the document. If it's part of the record, we'd like – I'm sure Mr. Nolan will let you know he's doing it. Can you do it within a few days? Yes. Sure. What's today? Just file it and we'll accept it. Can we do it within seven days? Is that okay? I'll try to do it by the end of the week if I can. Yeah, I'll put you in the entire court room. The sooner the better. Okay, thank you, Your Honor. Because if we give you a lawyer seven days, it'll be a month. No, a true seven days, Your Honor. Briefly, in response to Soterios' counsel's arguments, I want to point out first that there was a lot of argument, if not sort of testimony, about the different policies or procedures at Soterios as to what their business is and what they're capable of doing and underwriting versus what State Farm is capable of. And there's none of that in the record. I just would like to point out that in the trial court, in response to Soterios' motion for cross-motion for summary judgment, Soterios had previously filed a counterclaim, which their motion for summary judgment was based on. State Farm raised in its affirmative defenses in this case that Soterios knew and a mortgagee knew or should have known that the policy was taken out by someone other than their mortgage owner. And so that issue was never really addressed by the trial court because the trial court found it to be irrelevant because the mortgage clause protected the mortgagee regardless. And that's how I actually heard his argument. He said, I don't care. As long as we're named, we don't care. It's not our problem to figure out whether it's a valid policy. That's your problem. That's how I read his argument. Right. And that is his argument. But he also went into some comparisons of the ability of Soterios to do it versus State Farm. And I just wanted to point out that none of that is in the record. No one was deposed by Soterios with regards to these issues that were raised in State Farm's affirmative defenses because this came to the trial court on State Farm's motion for summary judgment. And then Soterios basically said, we don't care essentially what the facts are. The mortgage clause protects us. And that's how this came to this court. With regards to counsel's argument that there's no case law dealing with this language about a mortgage and the mortgagee clause being attached to a policy that runs to the mortgagor, again, there are. Even the old second bank case specifically referenced the relationship. And again, if the argument is it's just that specific language is not in the case, I agree with it. But that case, old second bank, this court basically said a central purpose behind the clause is to protect the mortgagee from the whims of the debtor. That's what this court said. It cited Appelman Insurance, 508 Appelman Section 3401 at 292-93 and Valley National Bank of Arizona versus Insurance Company of North America, 836 Pacific 2nd at 425 at 428. And it goes on to say, and it's rooted in the recognition that the mortgagee typically has no control over a mortgagor's representations and no knowledge or means of knowledge or facts upon which the mortgagor's representations are based. So this is this court just two years ago, essentially, two and a half years ago, recognizing the relationship with a mortgagee and mortgagor under the policy. And again, I won't repeat this. Let me ask you a question. Yeah. And I don't know. I think Justice Grissom could be a little more kind if you're spending answering my question. But what about counsel's point that we don't get to what the purpose is or any of that if the language is clear? And you could have put that in your policy. You could have said this is only valid if the named insured is the mortgagor. You could have put that in the mortgage clause. Could you not? Your Honor, I guess the answer would be yes. Could you? Yes, you could. The answer to your question, though, more fully is this mortgage clause is not ambiguous. It does say if a mortgagee is named. It talks about a mortgagee. But you can't take a mortgagee just without context. The mortgagee is essentially the mortgagee for the mortgagor. And that's clarified in the argument I made with regards to Section 10d1, where it comes full circle with regards to the connection between the mortgagee and the mortgagor. It's not just if a mortgagee gets named and that mortgagee happens to be a mortgagee on the property. You still have to look at the law with regards to insurance running with the named insured and not with the land. They don't just get to be the mortgagee because they're named and they have a mortgage on the land. There has to be that connection to the named insured at some point during that policy. And we're arguing at the beginning of that policy. Otherwise, you have someone with, and again, the trial court didn't rule on it, but if we assume for purposes of this argument that Jeff Dabrowski has no insurable interest and he's making a $100,000 claim, this is a wagering contract. This is the whole purpose for not having this type of contract. And if the issue is who is better to address that, State Farm or Soteris, there's arguments on both sides as to that. They know who their mortgageor is. They have the requirement. Paul, the mortgagee or mortgageor, would be required to give them that mortgage. We don't have that in the record on this either, that Paul provided that to them or there are questions to Paul about that. Well, it seems to me that State Farm or any insurance company issues homeowner's insurance. This is a homeowner's policy. Could say, Mr. Dolan, I'm going to insure you under this homeowner's policy. I don't care if you've got a mortgage or not, whether there's a mortgagee or not. I'm only dealing with you. Once they then say, but if there's a mortgagee who's named and identified, we can pay them directly and then we have that relationship. So it seems like State Farm agreed that if there is a claim that we cover, we can pay this named mortgagee. Doesn't it seem like that's what they did? I don't think you can imply that from what happened here. Why did they name him in the policy? Because Chuck Dabrowski represented that it was his mortgage company. He gave a name. Do you have a mortgage? Yes. Here's the name of the mortgage. It wasn't Soteris. It was Pat Soteris. Right. But that's in what, his application? Again, I'm going to have to get that to you specifically. That's right. Because to me, that's important. Because if the question is, is there a mortgage on the property and who is the mortgagee, that's a lot different than saying, do you have a mortgage and who is your mortgagee? Because then the insurance company is saying, I'm insuring you and your mortgagee, or I'm insuring you and a mortgagee. So it may be important. Do the Ocklin line of cases follow any of this? Ocklin, you say? Yes. Yeah. I mean, Ocklin is similar to my arguments in the, there it is, similar to my arguments with regards to Old Second and some of these other cases. It's distinguishable on its facts. In that case, there was not an issue of the policy being void ad initio due to no insurable interest. There was a misrepresentation in that case about prior claims. So in the application, there was a misrepresentation that there was no claim history essentially, and it turned out that there was, and the insurance company attempted to void the policy based on that and deny coverage to the mortgagee as well. And again, the language in that case that I believe supports State Farm's position here is they go on to say when they're making their decision in that case, we believe the situation before us, i.e., where the mortgagee's interest is in the insurance indebtedness, not in the property, and they cite the Fifth Third Bank, 771 Northeast 2nd at 1223, is one warning enforcement of the contract so as to protect the innocent third party. And so in that case, they're protecting the mortgagee because of the mortgagee's, the indebtedness, essentially, of the mortgagee. Not the security. Right. They're basically saying what I've argued essentially all morning this morning is that where there is that relationship, the courts are properly protecting that relationship. But where there isn't that relationship, there is not a basis in the contract or in the law to do so. And I know I'm probably over my time, aren't I? We've pushed through this. Okay. Well, I think unless Your Honors have any questions, I'm not going to argue just to continue arguing. I think you've heard what our position is, and I thank you for your time. And we would ask respectfully that the case be remanded consistent with our arguments. Very well. Thank you on behalf of my colleagues. We'd like to thank both attorneys for their arguments and preparation and briefing on this issue. We will take the matter under advisement. The court is standing recess. Thank you.